IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLA LEANN ASSEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:09-cv-00941-NKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Pending before the Court is Plaintiff Charla Leann Assel's ("Assel") Social Security Complaint [Doc. # 1]. Assel seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of her request for disability insurance benefits under Title II of the Social Security Act ("Act"). This is the second time the Commissioner has denied Assel benefits; the Court reversed and remanded the first denial. [Tr. 169-73; *Assel v. Astrue*, Case No. 07-00763-CV-W-NKL-SSA (W.D. Mo., May 30, 2008)]. On remand, the Administrative Law Judge ("ALJ") again found that Assel was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied Assel's request for review. Assel has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Because the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole, the Court denies Assel's Petition.

**I.   Background**

   **A.   Factual and Procedural History**[1]

Born on July 19, 1965, Assel, a high school graduate, worked as a mortgage analyst and account collector between 1987 and 1995, then primarily as a loan officer until July 31, 2005.  She filed an application for disability insurance benefits on July 18, 2006, claiming disability from July 31, 2005, due to lumbar radiculopathy, status post back surgery, fibromyalgia, depression, chronic pain, and degenerative arthritis in her back, shoulders, hips, and hands.  [Tr. 370].  On July 26, 2007, following an evidentiary hearing [Tr. 103-44], the ALJ denied disability benefits to Assel.  On July 21, 2008, the Appeals Council remanded the case back to the ALJ in conformity with the Court's May 2008 order, which held that "the ALJ failed to properly determine Assel's RFC [residual functional capacity] and failed to take into account Assel's mental limitations, including her difficulty with depression and sleep."  [Tr. 173].  Following the remand, another evidentiary hearing was held on December 10, 2008.  At the hearing, Assel modified her disability onset date from July 31, 2005, to June 1, 2006.  [Tr. 16].  On December 30, 2008, the ALJ issued a written decision again denying Assel benefits because she was not under a "disability" as defined in the Act.  [Tr. 1083-91].  After the Appeals Council denied Assel's request for additional administrative review of the ALJ's decision, Assel sought review by the Court.

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Since Assel's alleged onset date of June 1, 2006, through the date of the most recent evidentiary hearing, December 10, 2008, Assel was treated by health care professionals on ninety-seven different dates for her impairments. Assel testified that she had been seen by her primary care physician, John D. Barth, D.O., for thirty years. [Tr. 23]. Dr. Barth confirms that Assel has been his patient for more than twenty years. Medical records only reflect that Dr. Barth treated Assel from November 9, 2004, until July 25, 2006; however, Dr. Barth explained that Assel's medical records had been lost due to "water drainage." [Tr. 1027].

Since November 2004, according to the written records, Dr. Barth diagnosed and treated Assel for various conditions, including depression, insomnia, poor sleep hygiene, back pain, leg pain, and fibromyalgia. [Tr. 594-610]. While Assel saw Dr. Barth only twice after her onset disability date [Tr. 594, 596], she also saw Dr. Barth's colleague, Janet Gilbert, D.O., six times between September 2006 and June 2007. [Tr. 654-59]. Assel testified that Dr. Gilbert had once been her "regular physician" prior to Dr. Barth. [Tr. 121-22].

On June 4, 2007, Dr. Gilbert diagnosed Assel with insomnia and fibromyalgia. [Tr. 654]. Dr. Gilbert's diagnosis was consistent with the May 2006 observations of Thomas E. Scott, M.D., after he examined Assel: "The clinical picture is consistent with fibromyalgia and degenerative disc disease." [Tr. 554-55]. Dr. Gilbert's diagnosis was also in accord with the June 2006 observations of Salvatore Miceli, D.O. [Tr. 938-39 (Assel's symptoms "all appear[ed] to be very consistent with fibromyalgia.")]. Arnold

3

Katz, M.D., assessed Assel with fibromyalgia, insomnia, and chronic fatigue throughout all of her visits with him from October 4, 2007 through October 3, 2008. [Tr. 882-88]. As to her fibromyalgia diagnosis, Assel had eighteen tender points on October 4, 2007 and December 13, 2007; ten on March 3, 2008; seventeen on May 1, 2008; and six tender points on October 3, 2008. Dr. Barth was "carbon copied" on Assel's records from May 1, 2008 and October 3, 2008. [Tr. 882, 884]. On October 24, 2008, Dr. Barth evaluated Assel's residual functional capacity ("RFC"). [Tr. 1023-27]. In explaining his responses, he noted that some "objective findings" of Assel's complaints of pain include "fibromyalgia trigger points, cervical and lumbar spine disc disease, right shoulder–post rotator cuff." [Tr. 1024].

In addition to seeking treatment for fibromyalgia, Assel also saw other physicians for her leg, back, and abdominal pain. Prior to her alleged disability onset date, she underwent back surgery in August 2005, and had an ovarian cyst removed in March 2006. Assel was also diagnosed with chronic cholecystitis [Tr. 486], spinal stenosis [Tr. 496], stress incontinence, overactive bladder [Tr. 534], chronic low back pain due to degenerative disc disease [Tr. 570], and mild degenerative-type uptake [Tr. 562]. Since June 1, 2006, Assel was diagnosed with failed back syndrome, radicular pain, facet joint arthritis, chronic opioid use [Tr. 636], chronic low back pain, lumbar post laminectomy syndrome, ongoing tobacco use [Tr. 973], chronic constipation [Tr. 896], a hiatal hernia, chronic gastroesophageal reflux, irregular Z line, findings "consistent with Barrett's esophagus" [Tr. 899, 901], neck pain [Tr. 803, 971], bilateral carpal tunnel syndrome

4

[803], and irritable bowel syndrome [Tr. 1021]. In August 2008, she underwent a right carpal tunnel release. [Tr. 919].

Several of Assel's physicians had recommended smoking cessation, physical therapy, and exercise to help with her pain. [Tr. 505, 555, 569, 637, 939, 972]. As of the date of the evidentiary hearing, Assel had not quit smoking, though she was in a "program" and had reduced to smoking a half-pack per day [Tr. 37] from one pack per day [Tr. 131]. Assel testified that she was compliant with advice that she engage in physical and aquatic therapy [Tr. 40-41, 127], though notes in her medical record indicate that she was not consistent. [Tr. 630, 683, 851-53, 858, 879]. When Assel did attend, her physical therapist noted that Assel's pain rating was "gradually improving." [Tr. 748-49]. As for exercise, in June 2006, Dr. Miceli noted that "[Assel] was very disinterested" in establishing a cardiovascular exercise program as a treatment option for fibromyalgia. [Tr. 939]. She gave "multiple excuses," mostly financial in nature, for not beginning an exercise program, but ultimately "indicated that her only reason [for] this visit was to obtain disability." [Tr. 939].

In addition to her physical ailments, Assel had also been treated and diagnosed with mental impairments. Dr. Barth diagnosed Assel with depression in September 2005. [Tr. 606]. Dr. Gilbert had prescribed Cymbalta to Assel "some time in [2006]." [Tr. 121, 126-27]. Around June 2007, Dr. Gilbert switched Assel to the anti-depressant, Wellbutrin. [Tr. 123]. Later in 2007, Assel's psychiatrist resumed prescribing Cymbalta, which Assel had been taking as of the hearing date in December 2008. [Tr. 29]. In

5

October 2007, Dr. Katz also diagnosed Assel with depression, making the same diagnosis in June 2008. From August 2007 to July 2008, Assel received psychiatric services from Comprehensive Psychiatric Associates. [Tr. 783-801]. Her Global Assessment of Functioning ("GAF") score was 45 in August 2007, steadily increased and hit a high of 60 in January 2008, then remained at 58 from February 2008 to June 2008. [Tr. 793, 800-01, 905-07, 909-16]. These scores translated to "moderate impairment in functioning." [Tr. 1088]. Assel's treatment records indicated that she often had normal mental status and no risk of suicide or violence except for one instance of ideation. It also appears that Assel's depression was often linked to situational stressors. [Tr. 783-84, 85-88, 91-92, 94].

Assel reported that she is able to care for her granddaughter, drive, shop, and perform household chores. [Tr. 353, 355, 405, 411-12, 938, 1088].

**B.     The ALJ's Decision**

To establish her entitlement to benefits, Assel must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Assel was not under a "disability" unless her impairment was so severe that she was unable to do her previous work or–considering her age, education, and work experience–any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Assel did not meet this burden

at any time from June 1, 2006, her onset date, to December 30, 2008, the date of the ALJ's decision.

The ALJ found that Assel had several severe impairments including: degenerative disc disease, status post spinal laminectomies, failed back syndrome, right shoulder bursitis, chronic constipation, insomnia, and mild depression. *See* 20 C.F.R. 404.1521, *et seq.* However, the ALJ determined that Assel did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1 (2008). The ALJ further found that Assel retained the residual functional capacity to perform a range of work that involves lifting up to ten pounds, sitting six hours, and standing and walking two hours, as long as she has the opportunity to alternate sitting and standing positions at will. However, he found that her capacity prevents her from performing work that involves balance or exposure to unprotected heights. Further, she cannot work around dangerous machinery and can only occasionally climb stairs, stoop, kneel, crouch, or crawl. Assel is limited to simple, unskilled work due to her mental limitations. Although the ALJ found that Assel could not perform past relevant work as a loan officer, loan interviewer, or collection clerk, the ALJ found that Assel was capable of performing other light unskilled jobs, such as security system monitor, credit checker, and circuit board assembler, which exist in significant numbers in the regional and national economies. [Tr. 1087-90].

Assel raises three arguments on appeal. She asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to give sufficient weight to

7

the opinion of Dr. Barth, Assel's treating physician, 2) failed to include mental limitations in the RFC assessment that reflected the GAF scores of Assel's mental health treatment providers, and 3) failed to consider the vocational expert's response that no jobs would be available to a hypothetical claimant who possessed Assel's RFC and was "unable to work a full eight-hour work day, 40-hour work week on an ongoing consistent basis" [Tr. 48]. [Doc. #11, at 11, 15, 17].

**II.      Discussion**

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

    **A.      Weight Given to Dr. Barth's Opinion**

A treating physician's opinion is generally given controlling weight when it is "supported by medically acceptable laboratory and diagnostic techniques and [is] not . . . 'inconsistent with the other substantial evidence in [the] case record.'" *Hacker v.*

*Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Here, substantial evidence shows that Dr. Barth's opinions fail to meet this standard.

The Eighth Circuit has noted that "[a]ccording to the [American College of Rheumatlogy]'s 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003). None of Dr. Barth's "clinical impressions" based his fibromyalgia diagnosis [Tr. 597, 600] in an assessment of Assel's tender "trigger points." Nor is there evidence that he conducted an exam of Assel's trigger points. Dr. Barth's conclusory statements provide no context for evaluating them. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (a treating physician's opinion is not conclusive and must be supported by medically acceptable clinical or diagnostic data). From October 2007 to October 2008, Dr. Katz did conduct a full body joint exam of Assel and noted tender trigger points at each visit. But, even if Dr. Barth's October 24, 2008 opinion could have been based on the forwarded test results from Dr. Katz [Tr. 882-84], Dr. Barth did not state that Dr. Katz's results formed the basis of his assessment. Nothing in the record verifies how Dr. Barth formed his opinion, and if formed in 2006 when he last treated her, there is ro record to support it. This undermines the weight to be given to his diagnosis as a treating physician.

More importantly, even if Dr. Barth's diagnosis of fibromyalgia is supported by the record, the record reflects that Assel's pain responded well to physical therapy treatments, but Assel failed to continue with her treatment. In fact, Assel told Dr. Miceli,

9

another treater, that her only reason for her visit with him was to get disability. Dr. Miceli said that was unfortunate because exercise was "one of the few things that could actually help . . . ." [Tr. 939]. Additionally, she continues to smoke despite recommendations that quitting would improve her symptoms. "[A] claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008)).

The ALJ also noted that Dr. Barth's opinion is inconsistent with the other evidence of record. Most significantly, Dr. Barth stated that Assel suffered from "frequently debilitating pain and fatigue." [Tr. 1024-25]. However, Assel reported that she cares for her granddaughter and shops, cooks meals, does laundry, cleans the bathroom, vacuums, dusts, and loads and unloads the dishwasher. [Tr. 18, 21, 353, 405, 411-12, 938, 1088]. An ALJ can discount a treating physician's opinion based in part on a petitioner's own testimony about her activities. *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009).

Due to all of these reasons, it was within the ALJ's "zone of choice" to discount Dr. Barth's opinion. Dr. Barth's long established relationship with Assel was considered by the ALJ, but was appropriately weighed against these mitigating factors.

> **B.** **Impact of Global Assessment of Functioning Scores on Residual Functional Capacity Assessment**

The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity. *Pearsall v.*

10

*Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted). Assel argues that the ALJ's diagnosis of "mild depression" downgrades the severity of her impairment, otherwise indicated by her GAF scores, which the ALJ found to indicate "moderate impairment in functioning." [Tr. 1088]. However, GAF scores do not solely determine mental impairment. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (GAF scores have no "direct correlation to the severity requirements of our mental disorders listings."). As such, here, the ALJ also considered the efficacy of Assel's anti-depressant medication. [Tr. 784 (Assel was "pleased with current meds.")]. Additionally, subsequent psychiatric assessments indicated on the whole that "there were no indications of homicidal or suicidal ideation, normal motor activity, normal attention and concentration, congruent affect, normal insight and judgment, and intact memory" [Tr. 1088] and that Assel's depression was related to situational stressors. Here, the ALJ weighed these moderating considerations together with Assel's GAF scores in assessing her mental health problems. The ALJ's finding that Assel suffers from mild depression, as opposed to a more severe impairment, is supported by substantial evidence.

    **C.    Assel's Ability to Engage in Substantial Gainful Activity**

"The testimony of a vocational expert is relevant at step[] . . . five of the Commissioner's sequential analysis [of a claim for benefits], when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do . . . other work." *Gilbert v. Apfel*, 175 F.3d 602, 603 (8th Cir. 1999). Assel argues that the

ALJ failed to consider the vocational expert's testimony that a hypothetical claimant with Assel's RFC would not be able to find competitive work if "unable to work a full eight-hour work day, 40-hour work week on an ongoing consistent basis." [Tr. 48]. Assel's absentee rate from June 1, 2006 to December 10, 2008 averaged at least three treatment days a month. [Doc. # 11, at 17]. This is so even if Assel's visit to Dr. Miceli is not counted, as the Commissioner urges. [Doc. # 14, at 21]. Assel states that the vocational experts from both the July 2007 and December 2008 evidentiary hearings opined that this rate of absenteeism "would not be tolerated by an employer." [Doc. #11, at 17].

Assel mischaracterizes the vocational testimony. Neither of the experts opined on a specific rate of absenteeism that "would not be tolerated by an employer." Further, just as the Tenth Circuit Court of Appeals pointed out in *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000),

> [P]laintiff's current extrapolation of how many days she must have missed from work based on her medical record is faulty both in that it is not limited to time missed due to [the severe impairments found by the ALJ], . . . and in that it assumes she was required to miss entire days of work for each appointment.

While the ALJ's written opinion failed to explicitly reject Assel's contention that she is "unable to work a full eight-hour work day, 40-hour work week on an ongoing consistent basis," the rejection "is implicit in his decision." [Doc. # 14, at 20]. That finding is not outside the ALJ's "zone of choice," given the record.

While the opinion of the ALJ is disappointing because it contains substantial mistakes, the Court cannot say that the ALJ's ultimate decision is not supported by substantial evidence in the record.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Assel's Complaint [Doc. # 1] is DENIED.

                                                        s/ Nanette K. Laughrey
                                                      NANETTE K. LAUGHREY
                                                      United States District Judge

Dated: November 5, 2010
Jefferson City, Missouri